**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-23069-CIV-SIMONTON**

DRITA MARIE CREWS, substituted for
DONALD ALLEN CREWS,[1]

         **Plaintiff,**

**v.**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

         **Defendant.**

_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

      This matter is before the Court on the cross-motions for summary judgment filed by Plaintiff Drita Marie Crews ("Plaintiff") and by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Defendant"). ECF Nos. [12] [14] and [17].   This matter was referred to the undersigned Magistrate Judge pursuant to the Parties' Consent to Jurisdiction by United States Magistrate Judge, and Order Referring Case to Magistrate, and Clerk's Notice Reassigning Case. ECF Nos. [16] [18]. The summary judgment motions are now ripe for disposition.

      For the reasons stated below, the Plaintiff's Motion for Summary Judgment, ECF No. [12] is **GRANTED**, Defendant's Motion for Summary Judgment, ECF No. [14] is **DENIED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

---

[1] The Complaint in this case was filed by Donald Allen Crews, ECF No. [1]. Donald Crews died on December 18, 2015, and his Wife, Drita Marie Crews, moved to be substituted as the Plaintiff. ECF No. [19]. This Court granted the unopposed motion, and Drita Marie Crews was substituted as Plaintiff on March 17, 2016. ECF No. [20] Donald Crews will be referred to herein as "Mr. Crews."

I.    <u>PROCEDURAL BACKGROUND</u>

On August 1, 2011, Mr. Crews filed an application for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act") and for Supplemental Security Income benefits pursuant to Title XVI of the Act. (R. 188-98). [2] In  both instances, Mr. Crews alleged disability beginning July 31, 2010. Both claims were denied initially on January 6, 2012, and upon reconsideration on May 22, 2012.  (R. 130-35, 137-42, 148-58). Pursuant to Mr. Crews' timely request, on January 30, 2014, a hearing was held in front of Administrative Law Judge Martha Reeves ("ALJ"). (R. 39-54).  At the commencement of the hearing, Mr. Crews, who was represented by counsel, amended his disability onset date to August 27, 2013. (R. 41, 53).[3] The ALJ heard testimony from Mr. Crews and an impartial vocational expert. On February 6, 2014, the ALJ issued her decision, concluding that the Plaintiff was not disabled under sections 261(i), 223(d) and 1614(a)(3)(A) of the Act since July 31, 2010, through the date of the decision. (R. 18-38).

Mr. Crews requested review from the Social Security Administration Appeals Council, and submitted additional evidence to the Appeals Council while his request was pending. (R. 8, 712-26). The Appeals Council denied review on June 30, 2014.  (R. 3-8). Having exhausted all administrative remedies, Mr. Crews timely filed the pending complaint seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).  ECF No. [1].

---

[2]  The letter "R," followed by a page number is used to designate a page in the Administrative Record, which is contained in ECF No. [11].

[3] As will be discussed below, the ALJ's decision failed to acknowledge this update to Mr. Crews' alleged disability onset date. (R. 21). Similarly, and somewhat surprisingly, the complaint and both parties' motions for summary judgment relied upon the disability onset date as originally alleged in Mr. Crews' applications for disability insurance benefits for Supplemental Security Income benefits, and not the amended disability onset date. ECF Nos. [1, 12, 14, 15].

## II.    LEGAL ISSUES PRESENTED

Plaintiff claims that the ALJ committed two errors in determining that Mr. Crews was not disabled.  Plaintiff asserts that the ALJ a) failed to properly weigh the psychiatric medical evidence in finding that Mr. Crews had no severe medical impairment, and b) failed to properly evaluate Mr. Crews' credibility. ECF No. [14] at 12 and 17.

## III.    STANDARD OF REVIEW

Judicial review of the ALJ's decision in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's factual findings and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is more than a scintilla, but less than preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

When reviewing the evidence, the Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence "preponderates" against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.  *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).  This restrictive standard of review, however, applies only to findings of fact.  No presumption of validity attaches to the Commissioner's conclusions of law, which are reviewed *de novo*, including the determination of the proper standard to be applied in reviewing claims.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal.");
*Martin v. Sullivan*, *supra*, 894 F.2d at 1529.

Where, as here, new evidence is submitted to the Appeals Council, which
thereafter denies review, the court must "look at the pertinent evidence to determine if
the evidence is new and material, the kind of evidence the [Appeals Council] must
consider in making its decision whether to review an ALJ's decision." *Falge v. Apfel*, 150
F.3d 1320, 1324 (11th Cir. 1998). The court must then determine "whether the Appeals
Council correctly decided that the 'administrative law judge's action, findings, or
conclusion is [not] contrary to the weight of the evidence ....'" *Ingram v. Comm'r of Soc.
Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007) (quoting 20 CFR § 404.970(b)).

IV.     FRAMEWORK FOR ANALYSIS

The Social Security Administration applies a five-step sequential analysis to make
a disability determination. 20 C.F.R. § 404.1520(a)(4).[4]  The analysis follows each step in
order, and the analysis ceases if at a certain step the ALJ is able to determine, based on
the applicable criteria, either that the claimant is disabled or that the claimant is not
disabled.

A.     Step One

Step one is a determination of whether the claimant is engaging in substantial
gainful activity. 20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that
involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a).  "Gainful
work activity" is work that is usually done for pay or profit, whether or not a profit is
realized. 20 C.F.R. § 404.1572(b). If an individual has earnings from employment or self-
employment above a specific level set out in the regulations, it is presumed that she has
demonstrated the ability to engage in substantial gainful activity.  20 C.F.R. §§ 404.1574,

---

[4] Although Mr. Crews sought benefits pursuant to both Title II (Disability Insurance benefits) and
Title XVI (Supplemental Security Income benefits), this Order cites only to the relevant provisions
of Title II since the definition of disability is the same under both provisions. 20 C.F.R. § 416.202.

4

404.1575. If an individual has been participating in substantial gainful activity, she will not be considered disabled, regardless of physical or mental impairment, despite the severity of symptoms, age, education, and work experience.  The analysis proceeds to step two if the individual is not engaging in substantial gainful activity.

In the case at bar, the ALJ found first that Mr. Crews had not engaged in substantial gainful activity since July 31, 2010, the onset date as originally alleged.  (R. 23).  This determination is not challenged.  The analysis proceeded to step two.

B.    Step Two

At the second step, the claimant must establish that he has a severe impairment. Step two has been described as the "filter" which requires the denial of any disability claim where no severe impairment or combination of impairments is present.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  This step has also been recognized as a "screening" to eliminate groundless claims.  *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987).  The ALJ makes a severity determination regarding a classification of the claimant's medically determinable impairment or combination of impairments.  20 C.F.R. § 404.1520(c). To be severe, an impairment or combination of impairments must significantly limit an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521(a).   An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p.  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled and the analysis ends here.  If the ALJ finds that the claimant has a severe medically determinable impairment or combination of impairments, the process advances to the third step.

The evaluation of the severity of mental impairments is governed by 20 C.F.R. § 404.1520a.  This regulation sets forth a special technique to be used to determine whether a mental impairment is severe at step two.  Specifically, the ALJ is required to rate the degree of limitation in four functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and, episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  A five-point scale is used to rate the degree of limitation in the first three areas:  none, mild, moderate, marked, and extreme.  The last area, episodes of decompensation, is rated on a four-point scale:  none, one, two, three, and four or more. 20 C.F.R. § 404.1520a(c)(4).  If the degree of limitation in the first three areas is "none" or "mild" and the fourth area is "none," the impairment is generally considered "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation" in the ability to do basic work activities.  20 C.F.R § 404.1520a(d)(1).

In the case at bar, the ALJ found that Mr. Crews had the severe impairment of Spine Disorder, pursuant to 20 C.F.R. 404.1520(c) and 416.920(c).  (R. 23).  The ALJ found that he did not have a severe mental impairment, despite Mr. Crews alleging that he suffered from depression and anxiety. (R.24) The Plaintiff challenges the ALJ's finding that Mr. Crews' mental impairment was non-severe. The Defendant concedes that the ALJ's finding on this issue was error, which it describes as "harmless" since the ALJ continued with the analysis and considered Mr. Crews' claimed mental impairments in determining Mr. Crews' residual functional capacity, ECF No. [14] at 9. Since the ALJ found at least one severe impairment, the ALJ then proceeded to the next step.

### C.   Step Three

The third step requires the ALJ to consider if Plaintiff's impairment or combination of impairments is at the level of severity to either meet or medically equal the criteria of an impairment listed in 20 C.F.R. pt. 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) ("the Listings").  A claimant is considered to be

disabled if his impairment or combination of impairments: 1) is severe enough to meet or to medically equal the criteria of a listing; and 2) meets the duration requirement under 20 C.F.R. § 404.1509.  If the claimant's impairment or combination of impairments does not meet the criteria specified in the Listings, then the ALJ must proceed to the fourth step.

In the case at bar, the ALJ found that the Mr. Crews did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24).  Plaintiff has not challenged the ALJ's determinations at this step.  The analysis then proceeded to step four.

D.   Step Four

Step four is a two-pronged analysis that involves a determination of whether the impairments prevent the claimant from performing his past relevant work.  First, the ALJ must determine the claimant's Residual Functional Capacity ("RFC") as described in 20 C.F.R. § 404.1520(e).  RFC measures a person's ability to do physical and mental work activities on a sustained basis despite limitations caused by their impairments.  In making this determination, the ALJ must consider all of the claimant's impairments, regardless of the level of severity. 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8p; *Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 2014 WL 3643790, at *2 (11th Cir. Jul. 24, 2014) (an ALJ is required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation).

In the case at bar, the ALJ found that Mr. Crews had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except he should have a job that does not require a lot of interaction with co-workers or the general public. (R. 27). Plaintiff does not challenge the determination that he can perform work at the light

exertional level.  As discussed below, however, Plaintiff challenges the assessment that Plaintiff's mental capacity is non-severe.

The second phase of step four requires a determination of whether a claimant has the RFC to perform the requirements of his past relevant work.  20 C.F.R. § 404.1565.  In the case at bar, the ALJ, relying on the testimony of the vocational expert ("VE"), found that Mr. Crews was unable to perform any past relevant work. (R. 31). Plaintiff does not challenge this determination. The analysis proceeded to step five.

### E.   Step Five

If the claimant is not able to perform his past relevant work, the ALJ progresses to the fifth step.  At this step, the burden of production shifts to the Commissioner to show that other work that the claimant can perform exists in significant numbers in the national economy.  *Jones v. Apfel*, 190 F.3d 1224, 128 (11th Cir. 1999); 20 C.F.R. § 404.1520(g).  In making this determination, the ALJ considers a claimant's RFC as determined in connection with step four, as well as the claimant's age, education, and work experience to determine if he can perform any other work.  20 C.F.R. § 404.1520(a)(4)(v).

As noted above, here the ALJ considered Mr. Crews' age, education, work experience, RFC, and, based on the testimony of the vocational expert, found that there were jobs that existed in significant numbers in the national economy that he could perform.  (R. 32).  Thus, the ALJ also concluded that the Mr. Crews was not under a disability, as defined in the Act pursuant to 20 C.F.R. § 404.1520(g), from July 31, 2010, through the date of the ALJ's February 6, 2014 decision. (R. 33).

Plaintiff challenges this determination, arguing that Mr. Crews was disabled and that the ALJ improperly assigned "little weight" to the opinion of his treating psychiatrist and erred in her evaluation of his credibility.

V.     **PLAINTIFF'S BACKGROUND**

A.     **Evidence of Mr. Crews' Physical Impairments**

Mr. Crews was born in 1958 and was 55 years old at the time of his amended onset date. (R. 41). As noted, the ALJ found that he had the severe impairment of Spine Disorder. (R.23) Because the Plaintiff's challenges only the ALJ's decision pertaining to her evaluation of Mr. Crews' mental impairment, the Court's discussion of his physical impairments will be briefly summarized. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 805 (11th Cir. 2013) (citing *Carmichael v. Kellogg, Brown & Root Serv., Inc.,* 572 F.3d 1271, 1293 (11th Cir. 2009)).

From October, 2008 through April, 2009, Mr. Crews was treated by Dr. Alfredo Terrero for neck and back pain, insomnia and anxiety. Dr. Terrero initially prescribed Xanax, used to treat anxiety disorders, and Roxicodone, also known as oxycodone, an opioid pain medication used to treat moderate to severe pain. (R. 485). Through the course of his treatment, Dr. Terrero also prescribed Dilaudid, another opioid pain medication (R.476), Avinza, a morphine-based pain medication, and Celexa, an antidepressant. (R. 477-79).

In 2009 and 2010, Mr. Crews made several visits to hospital emergency rooms complaining of neck and back pain. On each occasion he was prescribed Percocet, which contains a combination of acetaminophen and oxycodone and is used to treat moderate to severe pain. (R. 304, 353, 365).

Mr. Crews was seen again by Dr. Terrero monthly from March until June of 2011. Dr. Terrero diagnosed neck and back pain, anxiety disorder and insomnia and prescribed Celexa, Xanax, Percocet, oxycodone and methadone, which is used as a pain reliever and as part of drug addiction detoxification program. Dr. Terrero noted that Mr. Crews was stable with treatment, and that a psychiatric evaluation was pending,. (R. 501-02).

Mr. Crews was seen at the 7th Avenue Pain & Rehabilitation Center on three occasions between February and May, 2012. He complained of back and shoulder pain, anxiety and insomnia. During the April visit he reported that he was working full time, but in May, he stated that his goal was to continue part-time catering. (R.574, 599). He was prescribed Roxicodone, Xanax and methadone, and Dilaudid, with a goal to wean him off Xanax and oxycodone. (R. 575, 580, 585, 597). Finally, on several occasions in 2013, Mr. Crews was treated by Dr. Ouw at the Medical Center of North Broward for pain resulting from a variety of physical ailments. Dr. Ouw noted the need for Mr. Crews to undergo a psychological evaluation. (R. 641). Mr. Crews was prescribed Xanax, Celexa, methadone, Dilaudid and Neurontin, an anticonvulsant also used to treat nerve pain. (R. 647-52).

### B.   Evidence of Mr. Crews' Psychological Impairments

#### 1.   *Dr. Mathew Jalazo, Consultative Psychologist*

Dr. Jalazo, a licensed psychologist, evaluated Mr. Crews on June 6, 2009 (apparently in connection with a previous social security disability claim). (R. 492-98). Mr. Crews found it difficult to make eye contact. He explained that he "ha[d] a lot of mental illness, memory loss, getting along with people and anger issues. He reported having grown up in a dysfunctional family, with a verbally and physically abusive father and claimed that he had been sexually abused in childhood by a priest, as well as raped in an alley at the age of 22. (R. 493).

Mr. Crews reported worsening memory, anxiety, increased anger and paranoia, all of which had become exacerbated after a fall three years earlier. He claimed to be "extremely paranoid" and reported putting cardboard over his windows, locking his bedroom door and keeping the lights on when he was sleeping. This behavior was confirmed by his wife. (R.494).  Mr. Crews further reported experiencing depression on a daily basis, and a tendency towards suicidal feelings. *Id.*

Dr. Jalazo provisionally diagnosed Mr. Crews as having chronic posttraumatic stress disorder; major depressive disorder, single episode, moderate; and cognitive disorder not otherwise specified.  (R.494). Dr. Jalazo noted that Mr. Crews possessed good insight and surmised that his depressive symptoms would improve to some extent if he could find and sustain gainful employment. He described Mr. Crews' prognosis as fair.  He further noted, however, that Mr. Crews' present level of functional impairment from an emotional standpoint, was marked and that therefore, "his competency to manage his own financial affairs should be further investigated."

Finally, Dr. Jalazo assessed Mr. Crews' daily functioning. Dr. Jalazo found that Mr. Crews had minimal capacity for engaging in activities of daily living. (R. 498). As to social functioning. Mr. Crews had minimal communication with his son and reduced sexual interest with his wife. As to concentration and task persistence, Mr. Crews, despite his reported memory problems and anxiety symptoms, was able to engage in his evaluation, persist on mental status tasks without becoming overly frustrated or quitting, and demonstrated adequate frustration and tolerance. As to deterioration or decompensation in work settings, Dr. Jalazo noted Mr. Crews' reports of paranoia, fighting with other employees, quitting jobs without notice and being victimized by other employees who pulled knives on him or slashed his tires. *Id.*

### 2.   *Dr. Andrew Klein, Consultative Psychologist*

Dr. Klein evaluated Mr. Crews on December 23, 2011. Mr. Crews related that he had been employed as a chef until 2009, when he stopped working due to emotional and interpersonal problems as well as problems with memory. He explained that his chronic back and neck pain made strenuous activity difficult, that he was irritable and impatient and had gotten into fights with coworkers. (R. 550). He reported having been hospitalized for one week in 2009 due to depressed mood and suicidal ideation and that he had received outpatient psychiatric treatment from 2006 to 2009. *Id.*  Mr. Crews complained of

11

insomnia, frequent crying, feelings of hopelessness, irritability, low energy and diminished self-esteem. He reported recurring suicidal thoughts as recently as one week prior to his examination, but denied current suicidal thoughts. He reported difficulties with memory and stated that he was unable to cook because he would burn food when he forgot to monitor it.  (R. 550-51).  He reported dysthymic mood. (R. 552).

Dr. Klein noted that Mr. Crews was cooperative and that his social skills were adequate. He was appropriately groomed, his speech was fluent and intelligible and his thought processes were coherent and goal directed, with no evidence of delusions, hallucinations or paranoia. *Id.* Dr. Klein found that Mr. Crews was mildly impaired in his attention and concentration and that he had difficulty with serial threes.  *Id.*  While his remote memory was intact, Mr. Crews had problems with recent memory and immediate recall. As one example, Mr. Crews was only able to recall one of three objects after five minutes. (R. 553).  Mr. Crews' insight and judgment were good, however his intellectual ability appeared to be in the low average range.  He exhibited a limited fund of information and had low average abilities for abstract reasoning. *Id.* Despite having what Dr. Klein described as "mild problems with attention and concentration," Dr. Klein determined that Mr. Crews was able to follow and understand directions and that he was likely capable of maintaining a regular schedule.  *Id.*

Dr. Klein provisionally diagnosed Mr. Crews with major depressive order, single episode, severe without psychotic symptoms, and recommended both psychotherapy and a psychiatric evaluation. Dr. Klein noted that Mr. Crews' prognosis was guarded. Nonetheless, he stated that Mr. Crew's presentation did not seem to match the level of intensity of the depressive symptoms he was reporting, "raising concerns about the possibility of symptom exaggeration." (R. 554).

12

3.    *Dr. Iliana Mendoza*

a)    Dr. Mendoza's Psychiatric/Physiological Impairment
Questionnaire

Mr. Crews submitted to the ALJ a Psychiatric/Psychological Impairment

Questionnaire completed by Dr. Mendoza, a psychiatrist, on January 15, 2014.  The

questionnaire revealed that Mr. Crews first saw Dr. Mendoza on April 16, 2013, and

continued to see her every three months[5] until his most recent examination on November

7, 2013. (R. 700). Dr. Mendoza diagnosed Mr. Crews as having a major depressive

disorder with anxiety features. She determined his GAF to be 45[6] and stated that his

prognosis was guarded.  *Id.*  According to Dr. Mendoza, clinical findings that supported

her diagnosis included poor memory, appetite disturbance, sleep disturbance,

personality change, mood disturbance, emotional lability, recurrent panic attacks,

anhedonia (the inability to experience pleasure in normally pleasurable acts) or pervasive

loss of interests, psychomotor agitation or retardation, feelings of guilt and

worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts,

decreased energy, generalized persistent anxiety and hostility and irritability. (R. 701).

Other clinical signs supporting Dr. Mendoza's diagnosis, based upon her psychiatric

evaluation and treatment of Mr. Crews, included his crying spells, difficulty in

concentrating, and feelings of hopelessness and helplessness. *Id.*  Dr. Mendoza found

that Mr. Crews' symptoms and functional limitations, including his inability to focus, the

---

[5] In fact, as will be seen below, Dr. Mendoza's treatment notes reflect that she saw Mr.
Crews on five occasions in seven months.

[6] At the time of Dr. Mendoza's questionnaire, the American Psychiatric Association
("APA") was utilizing the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed.
(DSMV-IV), which provided that a Global Assessment of Functioning ("GAF") score from
41–50 is indicative of "[s]erious symptoms (e.g. suicidal ideation, severe obsessional
rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or
school functioning (e.g., no friends, unable to keep a job)." DSM-IV.  The DSMV-IV has
since been superseded, and its successor, the DSMV-V, no longer uses GAF scores as a
diagnostic tool.

fact that he was easily distracted and his poor sleep, appetite and inability to concentrate, were reasonably consistent with his emotional impairments described in the evaluation. (R. 702).

Dr. Mendoza's questionnaire evaluated a series of mental activities within the context of Mr. Crews' capacity to sustain particular activities on an ongoing basis in a competitive work environment. She found that Mr. Crews was consistently "markedly limited," meaning that he could not perform the activity in a meaningful manner, in each of the 20 listed activities, to wit:  the ability to remember locations and work-like procedures; the ability to understand and remember one or two step instructions; the ability to understand and remember detailed instructions; the ability to carry out simple one or two-step instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to sustain ordinary routine without supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take appropriate precautions; the ability to

14

travel to unfamiliar places or use public transportation;  and the ability to set realistic goals or make plans independently." (R. 702-05).

Dr. Mendoza further found that Mr. Crews experienced episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from that situation and/or experience exacerbation of his symptoms. (R. 705).  She found that Mr. Crews continued to be depressed regardless of treatment and that his pain syndromes made that depression worse. *Id.*  She found that his psychotropic medication, Lexapro, used to treat anxiety and depression and Xanax, resulted in drowsiness, nausea and dizziness. *Id.*

Dr. Mendoza opined that Mr. Crew's impairments would last at least 12 months. She found that he was incapable of tolerating even low work-related stress. Dr. Mendoza stated, "the patient will not be able to keep a steady job due to his mental illness and multiple physical illnesses." She estimated that he would be absent from work more than three times per month (the most frequent number of absences within the four choices presented on the questionnaire). (R. 706-07). Finally, Dr. Mendoza concluded that Mr. Crews was not a malingerer. (R. 706).

### b)      Dr. Mendoza's Treatment Notes

As will be discussed below, Mr. Crews did not submit Dr. Mendoza's treatment notes to the ALJ, however they were submitted to the Social Security Administration Appeals Council.  These notes consisted of Dr. Mendoza's initial psychiatric evaluation and treatment plan, dated April 16, 2013; psychiatric progress notes created when she saw Mr. Crews on June 11, 2013, August 6, 2013, October 8, 2013 and November 7, 2013; a listing of the medications she prescribed on each of his five visits and on another occasion, and an undated patient health questionnaire completed by Mr. Crews. (R. 713-26)

15

As noted in the defendant's motion for summary judgment, much of Dr. Mendoza's treatment notes, particularly those portions containing her comments, are to a certain extent illegible.[7]  Nonetheless in the sections of the psychiatric progress notes containing lists of descriptions of a patient's mental status to be checked off by the attending physician, Dr. Mendoza's notes are *for the most part* legible.

On April 16, 2013, Dr. Mendoza found that Mr. Crews' mood was depressed and that his insight and judgment were fair. (R.715).[8]  On June 11, 2013,  Mr. Crews' mood was  depressed and angry. His insight, judgment, and sleep were deemed to be fair. His symptoms included a lack of motivation, inability to work due to symptoms, tearfulness, pain and decreased activities of daily living. (R. 717). On August 6, 2013, Mr. Crews' mood was depressed, anxious and angry. His insight, judgment, sleep and appetite were all fair. His thought process, previously found to be intact, was now only loosely associated. His symptoms again included lack of motivation, inability to work due to symptoms, tearfulness, pain and decreased activities of daily living. (R. 719).

At his next visit with Dr. Mendoza, on October 8, 2013, Mr. Crews presented a disheveled appearance. His speech was now incoherent and his general attitude was now uncooperative. His mood was anxious and euthymic. His insight and appetite were now poor, while his judgment and sleep remained fair.  His symptoms again included lack of motivation, inability to work due to symptoms and tearfulness. On this occasion,

---

[7] This Court will not engage in speculation as to the contents of the treatment notes. On remand, with the assistance of the parties, who may direct interrogatories to Dr. Mendoza if they so choose, the Commissioner will endeavor to interpret Dr. Mendoza's treatment notes. *See*, *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1991) (the illegibility of important records warrants remand for clarification and supplementation); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) ("Where the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation.")

[8] Other behavioral observations were either deemed normal or unremarkable, left unchecked, or it is left open to question as to which box was checked. As before, interpretation of these notes will be left to the ALJ on remand.

Mr. Crews was found to have low self esteem, however the check-boxes for pain and decreased activities of daily living were left empty. (R. 721).

Mr. Crews returned to Dr. Mendoza on November 7, 2013. He was again disheveled, his general attitude was uncooperative and his mood was depressed and anxious. His insight, judgment, sleep and appetite all appeared to be fair.   His thought process was described as a flight of ideas. As before, his symptoms included lack of motivation, inability to work due to symptoms, tearfulness and low self-esteem. (R. 723).

Finally, in his patient health questionnaire, Mr. Crews self-reported that nearly every day during the preceding two weeks, he had little interest or pleasure in doing things; felt down, depressed or hopeless; had trouble falling or staying asleep, or slept too much; felt tired or had little energy, had a poor appetite or overate; felt bad about himself or felt that he was a failure or had let himself or his family down; had trouble concentrating on things, such as reading the newspaper or watching television;  and that he either moved or spoke so slowly that other people could have noticed, or the opposite, that he had been so fidgety or restless that he had been moving around a lot more than usual.  (This last question does not specify which of these two opposing behaviors apply to the patient.)  Mr. Crews reported that on more than half of the days during the preceding two weeks, he had thought that he would be better off dead or of hurting himself in some way. (R. 726).

4.    _Mr. Crews' Testimony at the Hearing on January 30, 2014_

Mr. Crews testified that he lived at home with his wife and spent his days mostly in bed or on the couch.  His wife cooked for him, helped him bathe and washed his hair. (R. 41-42).  Due to his neck, back and sciatic nerve pain, he had to switch positions after sitting for an hour or two. He could walk 20 to 30 minutes without resting. (R. 42-43).  His memory and concentration were "very very poor." He had fought with others and could

17

no longer work as a chef because he burned things, could not time certain things and could not organize the way he used to. (R. 44-45).

Mr. Crews testified that any little thing upset him and he would get into arguments with other staff members, which in turn put him in a bad light with employers who told him they wanted a drama-free environment.  He testified that he could not complete the tasks given to him by his employers and that he was fired from his last job because his pain forced him to frequently sit down for long stretches of time and because he couldn't get along with anyone or take directions or orders from others. (R. 45-47).

Mr. Crews testified that he did not sleep and was constantly tossing and turning. He was taking prescribed Percocet, Lexapro, alprazolam (Xanax) and methadone. (R. 48-49).  He testified that he had tried to go back to work a year or two prior to the hearing[9] but had to quit after three days because it didn't work out. (R. 49).

5.   *Vocational Expert Jenny Cramer's Testimony at the Hearing*

Ms. Cramer testified that Mr. Crews could not perform his past work as a chef but that he had transferable skills such as following recipes or other written instructions. She opined that he could work as a food assembler, which, while it is not isolated work due to the presence of other workers, did not involve a lot of communication with them. (R. 50-52).  This job would not be suitable however, if the complete elimination of contact with coworkers was required, or if the individual was limited to simple repetitive tasks or had to occasionally sit. (R.52-53).

---

[9] **Thus, prior to the amended onset date of August 27, 2013.**

VI.     **THE ALJ ERRED IN ACCORDING "LITTLE WEIGHT" TO DOCTOR MENDOZA'S OPINION REGARDING MR. CREWS' MENTAL HEALTH**[10]

    A.     **Introduction**

The ALJ found Mr. Crews' mental impairment of depression and anxiety did not cause more than minimal limitation in his ability to perform basic mental work activities, and was therefore non-severe. (R. 24, 31). The ALJ accorded "little weight" to the opinion of Dr. Mendoza, Mr. Crews' treating psychiatrist, because she found it "inconsistent with the medical evidence as a whole." (R. 31).  In expanding on her findings, the ALJ first noted the absence in the record of any specialized treatment notes regarding Mr. Crews' depression which would support Dr. Mendoza's findings as to Mr. Crews' "debilitating mental residual function capacity." The ALJ then speculated that someone with Mr. Crew's condition would require more intense treatment than just psychotropic medication, and noted that there was no indication in the record that Mr. Crews had been seen in an emergency room for his mental disorder. The ALJ then found that the medical evidence of record "depicts the claimant as cooperative, alert and well oriented." (R. 25).

In support of her finding that Mr. Crews' depression was a non-severe limitation, the ALJ engaged in an analysis of the criteria set forth in 20 CFR, Part 404, Subpart P, Appendix 1.   In her discussion of three of the four broad functional areas set forth in 20 C.F.R. 404.1520a, the ALJ relied for the most part on the December 23, 2011 consultative report by Dr. Klein regarding Mr. Crews' activities of daily living; social functioning; concentration, persistence or pace. The ALJ found no evidence of decompensation. (R. 25-26).[11]

---

[10]  Given the issues raised in the Plaintiff's motion for summary judgment, the Court's review of the ALJ's decision is limited to her findings regarding Mr. Crews' mental health.

[11] Dr. Mendoza reported that Mr. Crews was undergoing decompensation, the fourth of the broad functional areas used to rate the degree of functional limitation. (R.705)

The ALJ's discussion of the broad functional areas also referred to the findings of the various non-examining reviewing psychologists who had reviewed Mr. Crews' records in January and May, 2012. These reviewing psychologists did not, of course see Dr. Mendoza's 2013 treatment records or January 2014 Psychiatric/Psychological Impairment Questionnaire. Nonetheless, the four reviewing psychologists, Drs. Yarborough, Hodes, Meyers and Patel, uniformly found that Mr. Crews suffered from severe affective disorders and anxiety disorders. (R. 62, 77, 95, 112), although they each also found that he was not disabled.

The reviewing psychologists uniformly found the Mr. Crews had moderate limitations on his a) restriction of activities of daily living, b) difficulties in maintaining social functioning, and c) difficulties in maintaining concentration, persistence or pace. (R. 62, 77, 95, 112). Nonetheless, the ALJ found that Mr. Crews had only mild restrictions in each of these broad functional areas. (R. 25-26).

### B.    Analysis

The law in the Eleventh Circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

The weight to be given to the opinion of a treating physician is governed by 20 C.F.R. § 404.1527(c)(2), which provides that a treating physician's opinion of the nature and severity of a claimant's impairment, if well-supported by medically accepted clinical and laboratory diagnostic techniques, and if not inconsistent with the other substantial evidence in the case, will be given controlling weight. When not accorded controlling weight, the Administration will consider various factors in determining the weight to be given to the opinion of a treating physician; these include the length of the treatment

relationship and frequency of examination, the nature and extent of the treatment relationship, the existence of relevant evidence to support the opinion, particularly medical signs and laboratory findings, the consistency of the opinion with the record as a whole and whether the physician's opinion relates to his or her area of specialty.

In the case at bar, Dr. Mendoza is a psychiatrist rendering an opinion on her patient's mental disorder; her area of specialty. Her notes reflect five patient visits between April and November of 2013, with this last visit occurring less than three months before Mr. Crews' hearing before the ALJ.  To the extent they are legible, they are internally consistent and consistent with her January 2014 Psychiatric/Physiological Impairment Questionnaire. Her assessment is further consistent with Mr. Crews' testimony at the hearing before the ALJ. This case is distinguishable from *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004), relied upon by the Defendant, where the treating physician's opinion conflicted with both his own treatment notes and the claimant's testimony.

In determining whether remand is necessary based on a claim that an ALJ failed to develop the record, the court considers whether the record a whole reveals evidentiary gaps which result in unfairness or clear prejudice.  *Ellison v. Barnhart*, 355 F. 3d 1272, 1275 (11th Cir. 2003) (before ordering a remand, the court will review the administrative record as a whole to determine if it is inadequate or incomplete or shows the kind of gaps in the evidence necessary to demonstrate prejudice).  Accordingly, there must be a showing of prejudice before the court will find that the claimant's right to due process has been violated to such a degree that the case must be remanded.

In the case at bar, of course, the ALJ did not have the benefit of Dr. Mendoza's treatment notes.[12] These notes were, however, presented to the Appeals Council. The

---

[12] **The ALJ has a duty to develop a full and fair record.  *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984); *Graham v. Apfel*, 129 F. 3d 1420, 1423 (11th Cir. 1997).  Under 20 C.F.R. §**

notes are new, not cumulative, relate to the period at issue, and given that they portray Mr. Crews as a man with a severe mental illness, create the possibility of changing the ALJ's decision. The ALJ's failure to consider these treatment notes undoubtedly prejudiced the Plaintiff.  The Court finds that in light of these treatment notes, the Appeals Council incorrectly decided that the ALJ's decision to deny benefits, and specifically her findings giving little weight to the opinion of Dr. Mendoza, were not contrary to the weight of the evidence.

Thus, in accordance with sentence four of 42 U.S.C.A. § 405(g), the Court will remand this matter to the Commissioner with instructions to consider Dr. Mendoza's treatment notes in rendering its determination as to whether Mr. Crews was disabled under the Act. *See*, *Smith v. Soc. Sec. Admin.,* 272 Fed. Appx. 789, 802 (11th Cir. 2008) ("Section 405(g) [of the Social Security Act] permits a district court to remand an application for benefits to the Commissioner ... by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands.' " [citing *Ingram v. Comm'r of Soc. Admin., supra,* 496 F.3d 1253, 1261. A sentence four remand, as opposed to a sentence six remand, is appropriate when "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record." *Ingram,* 496 F.3d at 1269.[13]

---

404.1512(d), the Administrator undertakes the responsibility to make every reasonable effort develop a claimant's relevant medical history. Plaintiff argues that it was incumbent upon the ALJ to request the records. Given the disposition of this case, however, the Court need not make this determination.

[13] When a case is remanded, "the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R. § 404.983. If the case is remanded by the Appeals Council to the administrative law judge, the process starts over again. *Id.* § 404.984. If the case is decided by the Appeals Council, then that decision is subject to judicial review. *Id. Ingram v. Comm'r of Soc. Admin., supra*, 496 F.3d 1253, at 1261.

While the ALJ cannot be faulted for failing to consider treatment notes that were not presented to her, she did have Dr. Mendoza's Psychiatric/Physiological Impairment Questionnaire of January 2014, which indicated recent treatment of Mr. Crews over a period of months in 2013. The Court finds that the ALJ should not have placed such heavy reliance on the report of Dr. Klein's consultative examination of Mr. Crews, which was stale, having occurred on December 23, 2011; more than a year before Mr. Crews started seeing Dr. Mendoza, and 20 months prior to Mr. Crews' August 27, 2013 onset date as amended.[14] Further, to the extent that the findings of the non-examining reviewing psychologists are considered by the Commissioner on remand, it is important to note that they are entitled to the least weight of any medical source. As the court stated in *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988):

> Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary. *Broughton v. Heckler,* 776 F.2d 960 (11th Cir.1985); *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir. 1986). The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler,* 765 F.2d 1090 (11th Cir. 1985); *Strickland v. Harris,* 615 F.2d 1103 (5th Cir. 1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. *Johns v. Bowen,* 821 F.2d 551 (11th Cir. 1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987).

---

[14] 20 C.F.R. § 404.1512(d) provides some guidance as to the time limits of relevant medical evidence. In pertinent part, it provides: *Our responsibility.* Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

**VII.   ON REMAND, THE COMMISIONER MUST CONSIDER DR.
MENDOZA'S OPINON AND TREATMENT NOTES IN DETERMINING
THE CREDIBILITY OF MR. CREWS**

**A.   Introduction to Assessing Credibility**

In the case *sub judice*, Mr. Crews is deceased. Nonetheless, his testimony in the
original proceeding, where he was examined by the ALJ, is clearly admissible in any
proceeding following remand to the Commissioner. *See*, *McQuiggin v. Perkins*, 133 S. Ct.
1924, 1936 (2013) noting that a "deceased witness' prior testimony, which would have
been subject to cross-examination, could be introduced in the event of a new trial.
(citing) *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177
(2004) (recognizing exception to the Confrontation Clause where witness is unavailable
and the defendant had a prior opportunity for cross-examination)."

The responsibility of the fact-finder, the ALJ, is to weigh the Plaintiff's complaints
about his symptoms against the record as a whole; this falls to the ALJ alone to make
this determination.  20 C.F.R. § 404.1529(a).  A clearly articulated credibility finding
supported by substantial evidence in the record will not be disturbed by a reviewing
court.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "[T]he ALJ's discretionary
power to determine the credibility of testimony is limited by his obligation to place on the
record explicit and adequate reasons for rejecting that testimony."  *Cannon v. Bowen*,
858 F.2d 1541, 1545 (11th Cir. 1988).  If the ALJ decides not to credit such testimony, he
must articulate explicit and adequate reasons for doing so.  *Hale v. Bowen*, 831 F. 2d
1007, 1011 (11th Cir. 1987).  For this, the ALJ must examine the *entire record*.

**B.   ALJ's Credibility Determination**

In the case at bar, the ALJ found that with respect to Mr. Crews' *physical*
impairments, his statements regarding the persistence, severity and limiting effects of
his impairment are not fully credible." (R. 30). The ALJ's findings as to Mr. Crews' mental
impairments were limited to her observation that, "claimant's allegations of severe

limitations in activities of daily living…[are] not as limited as alleged." (R.31-30). The ALJ stated that she "shares Dr. Klein's (the consultative examiner) concern about <u>the possibility of symptom exaggeration by the claimant</u>." (emphasis original). Dr. Mendoza, in her Psychiatric/Physiological Impairment Questionnaire, had made a specific finding that Mr. Crews was *not* a malingerer, however as previously noted, the ALJ, who did not have Dr. Mendoza's treatment notes, accorded her opinion little weight.

Accordingly, on remand, the Commissioner is directed to re-evaluate the testimony of Mr. Crews after considering Dr. Mendoza's treatment notes and giving her opinion the weight it deserves.

VIII.   <u>CONCLUSION</u>

Based on the foregoing analysis, the undersigned Magistrate Judge concludes that the ALJ's finding according Dr. Mendoza's opinion little weight, and thus her findings that Mr. Crews' mental impairment was non-severe and that he was not disabled, is contrary to substantial evidence in the record.

Plaintiff's Motion for Summary Judgment, ECF No. [12] is **GRANTED**, Defendant's Motion for Summary Judgment, ECF No. [14] is **DENIED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**DONE AND ORDERED** in chambers in Miami, Florida on March 31, 2016.


*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
All counsel of record